Coleman W. Watson, Esq.
coleman@watsonllp.com
Leia V. Leitner, Esq.
leia@watsonllp.com
WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634
Facsimile: 407.377.6688
*Attorneys for Defendants, Dixie Heritage, LLC, Asher Torgeman and Albert Tourgeman*

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| FLOGROWN, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> DIXIE HERITAGE, LLC; ASHER TORGEMAN; ALBERT TOURGEMAN, <br><br> Defendants. | Case No.: 6:17-cv-00983-GKS-GJK <br><br> **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW** |

Defendants, DIXIE HERITAGE, LLC ("Dixie"), ASHER TORGEMAN, and ALBERT TOURGEMAN, pursuant to Fed. R. Civ. P. 56, move for summary judgment on counts I, II, and III of the amended complaint, Doc. 38, served by Plaintiff, FLOGROWN, LLC, for summary judgment on counts I and II of the counterclaim, Doc. 29, and for summary judgment on the first and fourth affirmative defenses to the counterclaim, Doc. 36, and states as follows:

**I.      INTRODUCTION**

This is a tale of two companies with a long-standing business relationship of buying and re-selling goods, wherein Dixie was the buyer of Plaintiff's trademarked goods. Unfortunately, the parties' business relationship eventually went south after Dixie started buying products from another company, Local Brand Only, who is Plaintiff's competitor. Shortly thereafter, Plaintiff

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-1
Case No.: 6:17-cv-00983-GKS-GJK

accused Defendants of selling counterfeit goods bearing its mark at Dixie's. The instant trademark infringement lawsuit ensued between the parties. At issue is approximately forty (40) items that consist of t-shirts and other apparel that Plaintiff now claims are counterfeit because the FLOGROWN mark on those items is "heat pressed" rather than being "screen printed." As explained herein, judgment day has come on Plaintiff's amorphous claims because there is a complete lack of evidence as to those claims for this court to permit them to gain entry into the federal courthouse for purposes of trial.

## II. BACKGROUND

On July 18, 2017, Plaintiff filed the operative complaint against Defendants for claims of unfair competition under the Lanham Act, 15 U.S.C. § 1125, *et seq.* (count I); common law trademark infringement (count II); and, a violation of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501.207, *et seq.* (count III). *See generally* Doc. 38 at ¶¶ 21–49. Plaintiff alleges that it is the owner of certain registered, and self-proclaimed "famous," trademarks relating to the "FLOGROWN" word mark and design mark. *See id* at ¶ 2. Plaintiff is a clothing store that developed a, "staple of the fashion, sports, and boating industry and may be found in many retail locations nationwide." *Id.* The gravamen of Flogrown's amended complaint is that Defendants have allegedly manufactured and sold counterfeit goods bearing Plaintiff's trademark using a "heat press" without Flogrown's permission and consent at Dixie's retail store locations. *See* Doc. 38 at ¶¶ 1–5, 21–49. Plaintiff made these allegations even though Plaintiff and Defendants have a long-standing business relationship to sell goods bearing the FLOGROWN marks.

Defendants own and operate multiple retail stores in the State of Florida that manufacture, produce, and sell apparel and accessories to the consuming public. *See generally* Doc. 29 at 9–14. *See id.* Since early 2015, Defendants purchased various goods from Flogrown for re-sale at its retail locations. *Id.* These goods included onesies, sweatshirts, and jackets. *See id.* After Flogrown completed its printing services on the goods, Dixie then offered that merchandise for sale in its retail locations. *Id.* On prior occasions, Flogrown printed its logos on goods that Dixie purchased, and then provided these goods back to Dixie to re-sell at its

stores. *See generally* Doc. 29 at ¶ 13. Dixie also purchased goods from other companies, such as Local Brand Only, for re-sale in its retail locations, in addition to purchasing goods from Flogrown. *Id.*

Specifically, in August 2016, Plaintiff claims that one of its employees entered Defendants' retail store located in Oviedo, Florida and found reproductions of FLOGROWN products. Doc. 30 at ¶ 5. Jesse Welch, the owner of Plaintiff's marks, boldly asserted that he, "personally examined these goods and determined that they were "heat pressed" counterfeits that were not made by Plaintiff." Doc. 38 at ¶ 7. A few months later, Dixie hired an employee, Rebecca Goodine, as a sales associate for its Lakeland, Florida store location. *Id.* at ¶ 18–19. During the course of Goodine's employment, she observed Welch come into the store and purchase over $800.00 in Flogrown merchandise, which he claimed was "counterfeit." *Id.*

After nearly eight (8) months of discovery, Plaintiff has come up short and failed to offer a shred of evidence that Dixie counterfeited any goods bearing the FLOGROWN mark by using a "heat press" and/or used Plaintiff's marks in connection with the sale, offering for sale, and/or distribution of counterfeit goods. What is more, the record reflects an utter dearth of evidence that Dixie's actions were committed intentionally or, at a minimum, committed with a reckless disregard in connection with the use of Plaintiff's marks. Therefore, Defendants seek summary judgment as to liability as to all of Plaintiff's claims, Defendants' counterclaim, and two of Plaintiff's defenses to the counterclaim.

### III. LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On summary judgment, a court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Id.* at 251. A fact is "material" if it may affect the outcome of the suit under governing

law. *Id.* at 248. A federal court may enter summary judgment on affirmative defenses in the same manner as it does on claims. *See* Fed. R. Civ. P. 56(a) ("[a] party may move for summary judgment, identifying each claim or defense") (emphasis added). When a plaintiff moves for summary judgment on an affirmative defense, "the burden of establishing an affirmative defense lies on the defendant, not on the plaintiff." *Singleton v. Dep't of Corr.*, 277 F. App'x. 921, 923 (11th Cir. 2008) (emphasis in original).

To defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. *See, e.g.*, *Baker County Med. Services, Inc. v. Brown & Brown, Inc.*, 6:04-cv-1633, 2005 WL 2063021, at *4 (M.D. Fla. Aug. 24, 2005). Once the movant has established an absence of material facts in dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and that he or she is entitled to judgement as a matter of law, the nonmovant must come forward with definite, competent evidence to demonstrate a trial-worthy issue. *See, e.g.*, *Holt v. Blakley*, 167 F. App'x 86, 89 (11th Cir. 2006). The failure to do so allows the summary judgment engine to operate at full throttle.

## IV. ARGUMENTS & AUTHORITIES

### A. Dixie Had An Implied License To Sell Goods Bearing The FLOGROWN Mark.

"As explained in *Ryan v. Volpone Stamp. Co.*, 107 F.Supp.2d 369 (S.D.N.Y. 2000), 'a court faced with an infringement claim for unauthorized sales of a trademarked product must perform a two-part analysis. First, the court must consider whether the trademark owner authorized the first sale of the goods. Second, the court must consider whether the goods were genuine.'" *RFA Brands, LLC v. Beauvais*, No. 13-14615, 2014 WL 7780975, at *7 (E.D. Mich. Dec. 23, 2014), *report and recommendation adopted*, No. 13-14615, 2015 WL 519166 (E.D. Mich. Feb. 9, 2015). A party is not liable for trademark infringement where it enjoys a license to sell the underlying trademarked goods. *Ford Motor Co. v. O.E. Wheel Distributors, LLC*, 868 F. Supp. 2d 1350, 1370 (M.D. Fla. 2012) (citing *Doeblers' Penn. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 824 (3d Cir. 2006) ("It is irrelevant whether the parties thought of the arrangement at the time in terms of an implied license. The test for whether or not an implied license existed is based solely on the objective conduct of the parties.").

In this case, Dixie clearly had, at a minimum, an implied license from Flogrown to sell goods bearing the FLOGROWN mark, evidenced by the significant number of monthly sales that Dixie purchased from Flogrown for resell at its stores. Doc. 29 at ¶ 11. The only issue, then, is whether the specific goods at issue in the amended complaint were "genuine." *RFA Brands*, 2014 WL 7780975 at *7. Here, Flogrown has alleged that the goods are not genuine because the allegations of the amended complaint are that the goods are counterfeit. *See* Doc. 38 at ¶¶ 6, 7. To establish trademark counterfeiting, Plaintiff must prove that the Defendants intentionally used the FLOGROWN mark knowing that it was counterfeit. *See Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994).

A "counterfeit" mark means "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. To cut to the chase, Plaintiff's allegation is that Defendants were selling "heat pressed" t-shirts bearing the FLOGROWN mark. Doc. 38 at ¶¶ 6, 7. Through discovery, Plaintiff has adopted the position that this gives rise to counterfeiting because it only "screen prints" its t-shirts and that by virtue of the "heat pressed" t-shirts that it allegedly discovered in Dixie's business that that counsels towards counterfeiting. *See* Welch Dep. at 79:5–82:23: 93:14–97:17. According to the amended complaint, Plaintiff's employee Joey Camacho, "discovered" t-shirts located in Dixie's store with the FLOGROWN mark "heat pressed" onto the shirts. *Id.* at ¶ 6. Yet, at deposition it became clear that Camacho has never used a heat press machine and could not even explain the difference between how "screen printing" and "heat pressed printing" works. *See* Camacho Dep. at 26:2–27:2; 37:23–39:8; 60:2–5; *see also* Welch Dep. at 79:17–80:6. There is no evidence that Camacho can himself tell the difference between heat pressed and screen printed goods. *See id.*

The amended complaint also alleges that Jesse Welch, Flogrown's CEO, examined the goods at issue in this lawsuit and "determined that they were heat pressed counterfeits not made by Flogrown." Doc. 38 at ¶ 7. Yet, at deposition, Welch testified that he has no experience or training with heat pressing and has never used one. Welch Dep. at 56:4–10; 93:14–97:17. Again, as with Camacho, there is no evidence that Welch can himself tell the difference between heat pressed and screen printed goods because he admits that he has no experience with or has

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

been trained to identify counterfeit goods. *See id.* In fact, according to Welch, the only Flogrown employee that had experience with heat pressing was Flogrown's ex-Vice President, Acosta, because he used a heat press machine to heat press products for Flogrown. *See id.* at 100:20–23.

Compounding matters further, the only evidence whatsoever in this action to support the allegation that the goods at issue were counterfeit are the <u>photographs</u> attached to the amended complaint. *See* Doc. 38-1 at 21–26, 33–34. But according to Acosta, it is "almost impossible" to tell from looking at a photograph whether any particular item is heat pressed or screen printed. *See* Acosta Dep. at 79:8–80:11. If Acosta, who actually has experience with heat pressing cannot himself discern the difference in the photographic evidence between heat pressing and screen printing, then neither can the jury.[1] In short, given that Plaintiff has no expert report concerning whether the goods at issue are counterfeit, then Plaintiff must come forward with some <u>non-speculative</u> evidence to withstand summary judgment, which it has not done.

### B. There Is No Trademark Infringement To Support The Amended Complaint.

Although the amended complaint contains three separate claims for relief, Doc. 38 at 6–14, the court can and should dispose of all three claims through the same legal analysis. Indeed where, as here, a plaintiff alleges a statutory claim under the Lanham Act (*i.e.*, count I of the amended complaint), as well as a common law trademark claim (*i.e.*, count II), and a FDUTPA claim (*i.e.*, count III), "[i]t is not necessary to separately examine the latter two because 'the analysis is the same' for these as for the federal cause[ ] of action." *Schiappa v. CharityUSA.com, LLC*, 16-CV-81617, 2017 WL 2210274, at *3 (S.D. Fla. May 18, 2017) (citing *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994); *see also Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 801 (11th Cir. 2003) (same proposition). Findings with respect to Lanham Act claims, therefore, are "equally conclusive" of common law and FDUTPA claims. *Babbit Elec.*, 38 F.3d at 1181; *see also Suntree Tech., Inc. v. Ecosense*

---

[1] Plaintiff effectively concedes the necessity of expert witness in this action on this issue as well because it filed a motion with this court requesting that the court grant it additional time to retain an expert and produce an expert report "on the <u>crucial question</u> of whether heat press was used." Doc. 46 at 14 (emphasis added).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-6
Case No.: 6:17-cv-00983-GKS-GJK

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

*Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) ("Plaintiff's failure to establish a likelihood of confusion as to its Lanham Act claim also extinguishes its claim under Florida law.").

In order to establish an unfair competition claim under 15 U.S.C. § 1125(a)—as Plaintiff brings through count I—Plaintiff must show the following two elements: "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001). Analysis of unfair competition under the Lanham Act is essentially the same as the trademark infringement analysis as to the likelihood of confusion factors. *Uniy. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1541 (11th Cir. 1985); *see also Golden Bear Int'l Inc. v. Bear U.S.A., Inc.*, 969 F. Supp. 742, 748 (N.D. Ga. 1996) ("The test of federal trademark infringement is whether there is a 'likelihood of confusion' as a result of Defendant's activities. Similarly, an unfair competition claim under § 43(a) of the Lanham Act also depends on establishing a likelihood of confusion.").

For purposes of the instant motion only, Defendants do not challenge that Plaintiff has prior rights to the FLOGROWN mark, *Planetary Motion*, 261 F.3d at 1193; however, Defendants are nonetheless entitled to judgment as a matter of law because there is an absence of any evidence whatsoever of any likelihood of confusion, *id.* To determine whether there is a likelihood of confusion, the Eleventh Circuit has set out seven factors that district courts should consider: (1) the type of mark; (2) the similarity of the marks; (3) the similarity of the goods or services; (4) the similarity of the parties' retail outlets, trade channels, and customers; (5) the similarity of advertising media; (6) the defendant's intent; and (7) actual confusion. *Custom Mfg. & Eng'g, Inc. v. Midways Servs., Inc.*, 508 F. 2d 641, 773 (11th Cir. 2007). The type of mark and evidence of actual confusion usually should be given the most weight. *Id.* at 650.

The three claims in the amended complaint also allege that trademark infringement in this case is based on trademark counterfeiting. *See, e.g.*, Doc. 38 at ¶¶ 1, 5, 7, 10, 27. To establish trademark counterfeiting, Plaintiff, <u>in addition to the elements articulate above</u>, must also prove that the Defendants intentionally used the FLOGROWN mark knowing that it

was counterfeit, or was willfully blind to such use. *See Babbit Elec.*, 38 F.3d at 1181. Defendants are entitled to summary judgment because the intent and actual confusion elements are nowhere near in Plaintiff's favor. And in any event, Plaintiff can come forth with no evidence that Defendants intentionally used the FLOGROWN mark knowing that it was a counterfeit. *See supra*, Section IV-A. Summary judgment is due to be entered in Defendants' favor.

1. There is no evidence of an effect on interstate commerce to support count I.

At the outset, the court should be mindful that count I of the amended complaint for alleged unfair competition under the Lanham Act requires Plaintiff to establish an effect on interstate commerce. *Univ. of Florida v. KPB, Inc.*, 89 F.3d 773, 775 (11th Cir. 1996) ("Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition, but is limited to interstate commercial activities."). Significantly, the only federal claim in the amended complaint, count I, does not allege any connection whatsoever to interstate commerce. *See generally* Doc. 38 at ¶¶ 1–29. This alone requires the court to grant summary judgment as to count I. *See Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida, LLC*, 578 F. App'x 959, 962 (11th Cir. 2014) (citing *Iding v. Anaston*, 266 F. Supp. 1015, 1018 (N.D. Ill. 1967) ("The interstate commerce requirement . . . [of the Lanham Act] is of such importance that failure to allege this element is, of itself, cause of dismissal for failure to state claim").

A review of the allegations supporting count I of the amended complaint make clear that there is no interstate commerce alleged in the federal unfair competition claim. *See generally* Doc. 38 at ¶¶ 1–29. For example, even if the allegations of count I are accepted as true, Plaintiff only alleges that "Defendants have manufactured, offered for sale, and sold counterfeit apparel in the State of Florida." Doc. 38 at ¶ 5. Plaintiff also alleges that Defendants "have caused injury . . . within the State of Florida," *id.* at ¶ 15, and that Defendants operate "multiple retail locations" in four cities, all of which are located in Florida, *id.* at ¶ 18. In fact, the only paragraph in the complaint that alleges a connection to interstate commerce connection whatsoever is found in paragraph 33, which is not part of the allegations of count I. *See id.* at ¶

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-8
Case No.: 6:17-cv-00983-GKS-GJK

33. But Plaintiff cannot rely on an allegation that does not form part of its claim for relief in count I.  Because Plaintiff has not alleged a connection to interstate commerce in count I, Defendants are entitled to summary judgment as a matter of law on count I.  *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1251 (11th Cir. 2009) (affirming order where district court entered summary judgment against trademark owner for failure to establish the interstate commerce component of the Lanham Act).[2]

    2. <u>There is no competent evidence to support suit against Albert Tourgeman</u>.

Plaintiff has effectively admitted that its claims against Albert Tourgeman are nothing more than unsubstantiated speculation:

```
16   Q.   Okay.  Why have you sued Albert Tourgeman in
17        this case?

18   A.   For affiliation.

19   Q.   Okay.  Well, you sued him for trademark
20        counterfeiting.  Have you seen him counterfeit anything?

21   A.   Have I personally, no.

22   Q.   Any reason to think that Mr. -- that Mr. Albert
23        Tourgeman did any of the things that you say he did in
24        the complaint?

25   A.   Assuming he helps run this business, then I
 1        would assume he was in on the production of counterfeit
 2        goods.

 3   Q.   So it's only an assumption.  Did anybody tell
 4        you specifically, hey, I saw Albert Tourgeman heat press
 5        logos onto T-shirts?

 6   A.   Did anybody tell me that, no.

 7   Q.   Do you have any documents to suggest that
 8        Albert Tourgeman did that, that being printed with a
 9        heat press FloGrown logos onto goods?

10   A.   No.

11   Q.   So it's purely by affiliation with the Dixie
12        brand, the Dixie company, that you sued Mr. Albert
```

---

[2] In the absence of interstate commerce, Defendants are also entitled to judgment as a matter of law on the allegations in the complaint that seek statutory damages under the Lanham Act.  *See* Doc. 38 at 13 (requesting treble damages for trademark counterfeiting).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-9
Case No.: 6:17-cv-00983-GKS-GJK

> 13    Torgeman?
>
> 14    A.   Correct.

Welch Dep. at 164:16–165:14; *see also id.* at 188:20–189:8 (testifying that Plaintiff has never seen Albert Torgeman put the FLOGROWN mark on any shirt, nor heard of anyone who has observed same). Plaintiff cannot haul persons into federal court without any evidentiary basis to do so, and Albert Tourgeman is entitled to summary judgment on all claims because Plaintiff has nothing more than unsupported speculation that he violated federal or state law. *See Baker County Med. Services*, 2005 WL 2063021 at *4 (M.D. Fla. Aug. 24, 2005) (stating that unsupported speculation cannot withstand summary judgment). Plaintiff must now come forth with definite, competent evidence to defeat summary judgment as to Albert Tourgeman. *See Celotex Corp.*, 477 U.S. at 323.

In the absence of putting a sham affidavit in the record, *see* Fed. R. Civ. P. 56(h), Plaintiff will be unable to come forth with any such evidence that is not mutually exclusive to the testimony above. It is also telling that Plaintiff has not even bothered to depose Albert Tourgeman in this action, even though Plaintiff named him in the amended complaint and hauled him into federal court to answer claims which ostensibly lack factual support.

          3.   <u>There is no evidence that Defendants had bad intent</u>.

As stated above, Defendants are entitled to summary judgment because the intent and actual confusion factors weigh against a finding of likelihood of confusion, and Plaintiff has no evidence to support a claim that the goods at issue are counterfeit. "If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999). When determining the presence and significance of a defendant's intent, courts consider whether the defendant had a "conscious intent to capitalize on [the plaintiff's] business reputation, was intentionally blind, or otherwise manifested improper intent." *Custom Mfg. & Eng'g, Inc.*, 508 F.3d at 648.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-10
Case No.: 6:17-cv-00983-GKS-GJK

To put the allegations of trademark infringement in perspective for this court, in this case, the parties enjoyed several years of a prosperous business relationship wherein Dixie purchased tens of thousands of dollars of goods from Flogrown for resale. *See, e.g.*, Doc. 29 at ¶ 11. Then in August 2016, Flogrown allegedly discovered counterfeit goods at Dixie's stores. Doc. 38 at ¶ 6, To be clear, there was allegedly "at least two" counterfeit v-neck t-shirts, Welch Dep. at 81:20–82:23, that Camacho saw at the Oviedo store, which he documented with a photograph on his cell phone, *id.*, and which he did not actually buy, *id.* Ironically, Dixie continued to pay Flogrown significant sums of money even after this event concerning the alleged counterfeit items to buy and resell Flogrown goods in the Oviedo location. *See id.* at 84:21–85:6. These facts do not suggest an intention of deriving a benefit from the Flogrown's business reputation. In fact, it is illogical that Dixie would sell "at least two" counterfeit t-shirts but then continue to buy goods for resell, which Flogrown does not dispute. *See* Welch Dep. at 84:21–85:6.

    4.  <u>Plaintiff has no actual consumer confusion or trademark survey evidence</u>.

The amended complaint is silent as to any actual consumer confusion. At best, at deposition, Welch testified that he "believe[s]" there are "poor reviews" somewhere online that are "precipitated by public confusion" between Flogrown and Dixie's products. *See* Welch Dep. at 148:17–150:11; *see also* Doc. 38-1 at 6 (stating same in Welch Declaration). Yet, Welch was unable to identify where on the Internet he saw the reviews, if the reviews mentioned Dixie at all, or even who the consumers were, if any, that were confused. *See* Welch Dep. at 148:17–150:11. Any suggestion of confusion, then, is sheer hyperbole especially given not only Welch's inability to recall the evidence of confusion but also Plaintiff's failure to produce any evidence of confusion in this action.

What is more, Plaintiff has no confusion evidence by way of a consumer survey because Plaintiff does not have a survey expert and has not produced any expert report in this case. "To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion or consumer surveys." *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 486 (11th Cir. 2004). Although evidence of actual confusion is not required, *Citibank, N.A. v. Citibanc Group,*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-11
Case No.: 6:17-cv-00983-GKS-GJK

*Inc.*, 724 F.2d 1540, 1547 (11th Cir.1984), it is the best evidence of likelihood of confusion, *Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*, 830 F.3d 1242, 1264 (11th Cir. 2016). The total lack of any actual confusion in this case coupled with Plaintiff's failure to attempt to discover any such evidence strongly suggests that there is none. *See Nutraceutical Corp. v. Affordable Nats., LLC*, No. 214CV00907JNPPMW, 2017 WL 4564739, at *6 (D. Utah Oct. 11, 2017) ("Nutraceutical also has no survey data showing actual confusion. The complete lack of evidence of actual confusion strongly suggests that there is no genuine dispute as to likelihood of confusion."); *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 968 F. Supp. 568, 575 (D. Colo. 1997), *aff'd*, 185 F.3d 1084 (10th Cir. 1999) ("There is no competent of evidence of actual confusion in this case. Plaintiff has presented no survey evidence, and what anecdotal evidence it has proffered is unavailing.").

### C. There Is Evidence Of Defamation That Establishes The Counterclaim.

Much like Plaintiff's claims in the amended complaint, the court can and should also analyze counts I and II of the counterclaim under the same analysis because Florida federal courts have recognized that defamation can constitute a FDUTPA violation, and vice-versa, because the two claims for relief overlap. *See Army Aviation Heritage Found. & Museum, Inc. v. Buis*, 504 F. Supp. 2d 1254, 1262 (N.D. Fla. 2007) (discussing when a FDUTPA claim also establishes a defamation claim). Dixie and Asher Torgeman's FDUTPA claim arises out of identical transactions and occurrences that form the basis of their defamation claim. The court should apply the identical analysis to both claims because both claims arise out of the same transactions or occurrences of events that overlap. *See id.*

To establish defamation, a plaintiff must prove that (1) the defendant published a false statement, (2) about the plaintiff, (3) to a third party, and (4) that the falsity of the statement caused injury to the plaintiff. *E.g.*, *Valencia v. Citibank Int'l*, 728 So. 2d 330 (Fla. 3d DCA 1999). By Welch's own admission, he made statements to third parties concerning Dixie and Asher Torgeman that certain goods located in Dixie's stores were counterfeit and that Dixie and Asher Torgeman sold counterfeit goods. *See* Welch Dep. at 185:11–186:12. Welch published this statement to at least his girlfriend, his aunt, an ex-employee, and current employee that

goods he located at Dixie's store was counterfeit. *See id.* False statements that Dixie and Asher Torgeman sold counterfeit goods amount to slander-per-se under Florida law because the statements concern Dixie and Asher Torgeman's trade or profession given that Dixie and Asher Torgeman operate a retail store that sells t-shirts to the consuming public. *See Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1377 (M.D. Fla. 2002) ("An oral communication that imputes to another conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, or profession or office is slander *per se*."). General damages are presumed in slander-per-se actions. *Id.* Thus, Dixie and Asher Torgeman have established all elements of defamation under Florida law. *See Valencia*, 728 So. 2d 330.

In a defamation action, the liability of a company is dependent upon the liability of its agents. *Schreidell v. Shoter,* 500 So.2d 228, 232 (Fla.3d D.C.A.1986). Generally, a corporate employer can be held vicariously liable for an intentional act of its employee when the employee is acting within the scope of the employer's apparent authority, even if the employer did not permit or otherwise authorize the act, or it was not necessary or appropriate to serve the interest of the employer. *Dieas v. Associates Loan Co.,* 99 So.2d 279, 280 (Fla. 1957); *accord Canto v. J.B. Ivey and Company,* 595 So.2d 1025(Fla. 1st DCA 1992); *Lay v. Roux Lab., Inc.,* 379 So.2d 451, 453 (Fla. 1st DCA 1980); *Wackenhut Corp. v. Greene,* 238 So.2d 431, 432 (Fla.3d DCA 1970). Thus, Flogrown is vicariously liable for the defamatory statements of its agent, Welch.

**D.  The First And Fourth Affirmative Defenses To The Counterclaim Must Fail.**

1. <u>Plaintiff has no evidence to support its first affirmative defense</u>.

Through its first affirmative defense, Plaintiff seeks to avoid liability by alleging that any statements that it made were "truthful, matters of opinion, fair comment, privileged, or invited." Doc. 36 at 4. "Under Florida law, '[a] false statement of fact is the *sine qua non* for recovery in a defamation action.'" *Hoechst Celanese Corp. v. Nylon Eng'g Resins, Inc.*, No. 94-346-CIV-FTM-24(D), 1997 WL 661135, at *5 (M.D. Fla. Aug. 14, 1997), *aff'd sub nom. Celanese v. Nylon Eng.*, 189 F.3d 484 (11th Cir. 1999) (citing *Byrd v. Hustler Magazine, Inc.,* 433 So.2d 593, 595 (4th DCA 1983), *petition for rev. denied,* 443 So.2d 979 (Fla. 1984). Case law recognizes that statements that another sells counterfeit goods is considered defamatory per se.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-13
Case No.: 6:17-cv-00983-GKS-GJK

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

*See Beauty Beauty USA, Inc. v. Chin Hong Luo*, No. 11 CIV. 5349 LAK, 2011 WL 4952658, at *1 (S.D.N.Y. Oct. 13, 2011).

Truthful statements are a complete defense to defamation. *Klayman v. City Pages*, 5:13-CV-143-OC-22PRL, 2014 WL 12621240, at *6 (M.D. Fla. July 9, 2014) (citing *LRX, Inc. v. Horizon Assocs. Joint Venture ex rel. Horizon–ANF, Inc.*, 842 So. 2d 881, 887 (Fla. 4th DCA 2003) ("Under Florida law, truth is only a defense to defamation when the truth has been coupled with good motive.")). As explained above, however, Plaintiff has no evidence that the goods at issue are counterfeit, and by extension cannot prove the alleged truthful nature of this statement, because Plaintiff has, *inter alia*, no expert report concerning counterfeiting, nor has Plaintiff disclosed an expert. *See supra*, Section IV-A. To reiterate, Plaintiff's only evidence in this case of alleged counterfeit goods arises from a series of photographs in the record, and by Plaintiff's own admission, it is impossible to discern from photographs whether goods are heat pressed or screen printed. Allowing this defense to proceed to trial would be futile because Plaintiff has no evidence to support the defense.

2. <u>Plaintiff's fourth affirmative defense is not valid as a matter of law</u>.

Defendants are entitled to summary judgment on the fourth affirmative defense because it is divorced from the allegations of the counterclaim. According to Plaintiff, if it is liable to Dixie and Asher Torgeman for a FDUTPA violation and for defamation, then such liability is extinguished by Dixie and Asher Torgeman's failure "to perform certain duties required by their contract with Plaintiff and thereby breached that contract, excusing Plaintiff from performing its agreed upon duties under the contract." Doc. 36 at 4. Stated another way, the defense is nothing more than one of prior breach of a contract. *United States F/u/b/o Jack Daniels Constr., Inc. v. Liberty Mut. Ins. Co.*, 8:12-CV-2921-T-24TBM, 2015 WL 9460115, at *8 (M.D. Fla. Dec. 28, 2015) (recognizing that the defense of prior breach excuses contract performance when the adverse party breaches an applicable contract first). But, nowhere in the counterclaim do Dixie and Asher Torgeman allege the existence of a contract between the parties for purposes of the FDUTPA and defamation claims. *See generally* Doc. 29. Thus, a prior breach to a contract is no defense to claims that are based in tort, not contract law.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-14
Case No.: 6:17-cv-00983-GKS-GJK

## V. CONCLUSION

Defendants are entitled to summary judgment for numerous reasons, any of which will suffice for the court to grant the instant motion. Dixie had at least an implied license to sell Flogrown goods, evidenced by the significant Flogrown products that Dixie purchased from Plaintiff over the years. Plaintiff cannot meet its burden in this case of establishing that the goods at issue are counterfeit because it has no expert report and a lay person cannot discern the difference between heat-pressed and screen-printed goods. There is no allegation in count I of the amended complaint to support the interstate commerce requirement of the Lanham Act. There is no evidence, by Plaintiff's own admission, to support any claims against Albert Tourgeman. Plaintiff has no evidence as to at least two of the trademark infringement factors recognized by the Eleventh Circuit. Plaintiff has admitted the allegations necessary to enter judgment as to the counterclaim. And there is no competent evidence to support Plaintiff's defenses to the counterclaim. This court should enter summary judgment in Defendants' favor as to all issues briefed herein.

**WHEREFORE,** Defendants, DIXIE HERITAGE, LLC; ASHER TORGEMAN; ALBERT TOURGEMAN, pursuant to Fed. R. Civ. P. 56, respectfully requests the entry of an order (i) GRANTING summary judgment in favor of Defendants and against Plaintiff, FLOGROWN, LLC, as to counts I through III of the amended complaint; counts I and II of the counterclaim; and the first and fourth affirmative defenses to the counterclaim; (ii) GRANTING leave for Defendants to file a motion for attorneys' fees and costs on count III of the amended complaint, pursuant to §§ 501.211, 501.2105, Fla. Stat., as the prevailing party on the FDUTPA claim; (iii) GRANTING leave for Defendants to file a motion for attorneys' fees and costs on count I of the counterclaim, pursuant to §§ 501.211, 501.2105, Fla. Stat., as the prevailing party on the FDUTPA claim; and (iv) any such further relief as the court deems just and proper.

**DATED** on May 11, 2018

Respectfully submitted,

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

WATSON LLP

*/s/ Coleman Watson*
**Coleman W. Watson, Esq.**
Florida Bar. No. 0087288
California Bar No. 266015
Georgia Bar No. 317133
New York Bar Reg. No. 4850004
Email: coleman@watsonllp.com
    docketing@watsonllp.com
**Leia V. Leitner, Esq.**
Florida Bar No. 0105621
Email**:** leia@watsonllp.com
**Ronika J. Carter, Esq.**
Florida Bar No. 0122358
Email: ronika@watsonllp.com

**WATSON LLP**
189 S. Orange Avenue
Suite 810
Orlando, FL 32801
Telephone: 407.377.6634
Facsimile: 407.377.6688

*Attorneys for Defendants, Dixie Heritage, LLC, Asher Torgeman and Albert Tourgeman*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 11, 2018, pursuant to Fed. R. Civ. P. 5(d)(3), I filed the foregoing document electronically with this court's CM/ECF system, which will serve an electronic copy of the foregoing document on the following counsel of record in this proceeding:

> Andrew Rapacke
> The Rapacke Law Group, P.A.
> 950 S. Pine Island Road
> Ste A-150
> Plantation, FL 33324
> andy@arapackelaw.com
> Attorney for FloGrown, LLC

*/s/ Coleman Watson*
**Coleman W. Watson, Esq.**

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT-16
Case No.: 6:17-cv-00983-GKS-GJK