**PRELIMINARY INSTRUCTIONS[1]**

**1.1 General Preliminary Instruction**

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

---

[1] The parties have agreed to confer in good faith after the Court rules on the pending Motions for Summary Judgment to revise the instructions, as needed, depending on the Court's rulings.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence</u>:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he or she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- the witness's memory;

- the witness's manner while testifying;

- any interest the witness has in the outcome of the case;

- any bias or prejudice the witness may have;

- any other evidence that contradicts the witness's testimony;

- the reasonableness of the witness's testimony in light of all the evidence; and

- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, Flogrown, claims the Defendants made and sold counterfeit goods

3

bearing its FLOGROWN trademark. The Defendants deny those claims and contend that Flogrown has made defamatory statements to its vendors.

Burden of proof:

Flogrown has the burden of proving its case by what the law calls a "preponderance of the evidence." That means Flogrown must prove that, in light of all the evidence, what it claims is more likely true than not. So, if you could put the evidence favoring Flogrown and the evidence favoring the Defendants on opposite sides of balancing scales, Flogrown needs to make the scales tip to its side. If Flogrown fails to meet this burden, you must find in favor of the Defendants.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," the Defendants have the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts the Defendants must prove for any affirmative defense. After considering all the evidence, if you decide that the Defendants have successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

The Defendants have also brought claims for relief against Flogrown called counterclaims. On these claims, the Defendants have the same burden of proof that Flogrown has for their claims.

Conduct of the jury:

4

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, and the Internet, including social-networking websites such as Facebook, MySpace, and Twitter.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

5

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Flogrown will present its witnesses and ask them questions. After Flogrown questions the witness, the Defendants may ask the witness questions – this is called "cross-examining" the witness. Then the Defendants will present their witnesses, and Flogrown may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

**1.4 Jury Questions**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

- First, you must submit all questions in writing. Please don't ask any questions aloud.

- Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

- Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an

opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

**1.5 Interim Statements**

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

**TRIAL INSTRUCTIONS**

**2.1 Stipulations**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

**2.5 Judicial Notice**

      The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted _____

_____

as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

**2.6 Use of Interrogatories**

You'll now hear answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

**2.8 Civil *Allen* Charge**

Members of the jury:

I'm going to ask you to continue your deliberations to reach a verdict. Please consider the following comments.

This is an important case. The trial has been expensive in terms of time, effort, money, and emotional strain to both the plaintiff and the defendant. If you fail to agree on a verdict, the case remains open and may have to be tried again. A second trial would be costly to both sides, and there's no reason to believe either side can try it again better or more exhaustively than they have tried it before you.

Any future jury would be selected in the same manner and from the same source as you. There's no reason to believe that the case could ever be submitted to a jury of people more conscientious, more impartial, or more competent to decide it – or that either side could produce more or clearer evidence.

It's your duty to consult with one another and to deliberate with a view to reaching an agreement – if you can do it without violating your individual judgment. You must not give up your honest beliefs about the evidence's weight or effect solely because of other jurors' opinions or just to return a verdict. You must each decide the case for yourself – but only after you consider the evidence with your fellow jurors.

You shouldn't hesitate to reexamine your own views and change your opinion if you become convinced it's wrong. To bring your minds to a unanimous result, you must openly and frankly examine the questions submitted to you with proper regard for the opinions of others and with a willingness to reexamine your own views.

If a substantial majority of you is for a verdict for one party, each of you who holds a different position ought to consider whether your position is reasonable. It may not be

reasonable since it makes so little impression on the minds of your fellow jurors – who bear the same responsibility, serve under the same oath, and have heard the same evidence.

You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in light of the court's instructions on the law. You may take all the time that you need.

I remind you that in your deliberations, you are to consider the court's instructions as a whole. You shouldn't single out any part of any instructions including this one, and ignore others.

You may now return to the jury room and continue your deliberations.

**BASIC INSTRUCTIONS**

**3.1 Introduction**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:17-cv-983-Orl-18-GKS-GJK

FLOGROWN, LLC,

      Plaintiff/Counterdefendant,

vs.

DIXIE HERITAGE, LLC,
ASHER TORGEMAN, and
ALBERT TOURGEMAN,

      Defendants/Counterplaintiffs.
_____/

<u>COURT'S INSTRUCTIONS TO THE JURY</u>

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

### 3.2.2 The Duty to Follow Instructions – Corporate Party Involved

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

**3.3 Consideration of Direct and Circumstantial Evidence;**
**Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**3.4 Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

### 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

### 3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence

In this case it is the responsibility of the party bringing any claim to prove every essential part of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the party's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the party making that claim or contention.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of a party's claims by a preponderance of the evidence, you should find for the Defendant or Counter-Defendant as to that claim.

**3.7.2 Responsibility for Proof – Affirmative Defense**
      **Preponderance of the Evidence**

    In this case, the Counter-Defendant, Flogrown, asserts the affirmative defenses of truth, opinion, fair comment, privileged, or that statements were invited against Counter-Plaintiff's Defamation claim. Even if the Party bringing the claim proves its claims by a preponderance of the evidence, the Counter-Defendant can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

    I caution you that the Counter-Defendant does not have to disprove the Counter-Plaintiff's claim, but if the Counter-Defendant raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

**3.8.2 Duty to Deliberate When Both Plaintiff and Defendant
Claim Damages or When Damages are not an Issue**

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**3.9 Election of Foreperson Explanation of Verdict Form**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**TRADEMARK INSTRUCTIONS**

**10.1 Trademark Infringement – Registered Trademark**

Flogrown claims that the Defendants have infringed its registered trademark. To prove its claim, Flogrown must prove the following facts by a preponderance of the evidence:

1: Flogrown owns a trademark that is entitled to protection; and

2: That the Defendants are using a mark that infringes upon Flogrown's trademark.

You are instructed and must accept as a fact that Flogrown owns a federal registration of the trademark it seeks to protect in this action.

Because Flogrown owns a federal registration of the trademark, the Defendants are deemed to have knowledge of the registration and of the rights claimed in the registration. This is known as "constructive notice," and the Defendants cannot claim that they adopted the trademark without knowledge of Flogrown's trademark. In this case, Flogrown enjoys nationwide constructive notice of rights dating back to the filing date of the application, which is May 12, 2011.

Infringement: Introductory Jury Charge

If you have determined that Flogrown owns a trademark that is entitled to protection, you must next consider whether the Defendants infringed Flogrown's trademark. The test for infringement is whether the Defendants' mark is "likely to cause confusion" with Flogrown's trademark.

That is, you must determine if the Defendants, without Flogrown's consent, used the same or a similar trademark in connection with the sale of, or the offer to sell, goods in a manner that is likely to cause confusion among consumers as to the source, affiliation,

24

approval, or sponsorship of the goods. "Source," "origin," "affiliation," "approval," or "sponsorship" means that the public believes that the Defendants' goods come from, are affiliated with, are approved by, or sponsored by Flogrown.

It is not necessary that the trademark used by the Defendants be an exact copy of Flogrown's trademark. Instead, Flogrown must demonstrate, by a preponderance of the evidence, that the Defendants' use of its trademark is, when viewed in its entirety, likely to cause confusion as to the source, origin, affiliation, approval, or sponsorship of the goods in question.

Infringement

Flogrown claims that the Defendants have infringed its trademark. For Flogrown to succeed on this claim you must find by a preponderance of the evidence that the Defendants:

> 1: used the trademark in connection with the sale or offer to sell goods;
>
> 2: used the trademark in commerce; and
>
> 3: used the trademark in a manner that is likely to:
>
>> a. cause confusion, mistake, or deception as to
>>
>> b. the source, origin, affiliation, approval, or sponsorship of the Defendants' goods.

Infringement: Likelihood of Confusion (Seven-Factor Test)

There are seven factors you can use to determine whether a likelihood of confusion exists. No single factor or consideration controls, and Flogrown is not required to prove all, or even most, of the factors are present in any particular case. You may also use factors other than these seven. You should weigh all of the relevant evidence in determining whether a likelihood of confusion exists.

1. Type and Strength of Flogrown's Trademark

25

The first factor is the "type and strength" of the trademark. Trademarks come in different "types" or categories, namely, "generic," "descriptive," "suggestive," "arbitrary," and "fanciful" or "coined." The type of a claimed trademark is relevant to the trademark's strength.

Some trademarks are stronger than others. The "stronger" the trademark, the more protection should be given to it. I will now describe each type of trademark in the order of their general relative strength.

a. Generic:

A claimed trademark is generic if it is the word, name, symbol, device, or any combination thereof, by which the good commonly is known. An example of a generic trademark is "escalator" for moving stairs.

Whether a claimed trademark is generic does not depend on the term itself, but on use of the term. A word may be generic of some things but not of others. For example, "ivory" is generic for elephant tusks, but it is not generic for soap.

Whether a claimed trademark is a generic term is viewed from the perspective of a member of the public evaluating the trademark.

Claimed generic trademarks are not protectable as marks. They cannot be registered with the U.S. Patent and Trademark Office.

b. Descriptive:

A "descriptive" trademark only describes an ingredient, quality, characteristic, function, feature, purpose, or use of the good provided under it. An example of a descriptive trademark would be VISION CENTER for an eyeglasses store. Descriptive trademarks are eligible for registration with the U.S. Patent and Trademark Office if the trademark has acquired "secondary meaning." A trademark has acquired secondary meaning if the primary

significance of the trademark in the minds of the consuming public is not the associated good itself, but instead the source or producer of the good.

There are four factors you may use in determining whether secondary meaning exists:

1. The length and nature of the trademark's use;

2. The nature and extent of advertising and promotion of the trademark;

3. The efforts of the trademark owner to promote a conscious connection between the trademark and its business; and

4. The degree to which the public recognizes Flogrown's good by the trademark.

c. <u>Suggestive:</u>

A "suggestive" trademark suggests, rather than describes, qualities of the underlying good. If a consumer's imagination is necessary to make the connection between the trademark and the goods then the trademark suggests the features of the good. An example of a suggestive trademark is ICEBERG for a refrigerator. Suggestive trademarks are eligible to be registered in the U.S. Patent and Trademark Office without proof of secondary meaning.

d. <u>Arbitrary and Fanciful or Coined:</u>

An "arbitrary" trademark is a real word but has no logical relationship, to the underlying goods. An example of an arbitrary trademark is DOMINO for sugar.

A "fanciful" or "coined" trademark is a trademark created solely to function as a trademark but which has no meaning beyond the trademark itself. An example of a fanciful or coined trademark is EXXON for gasoline.

Arbitrary and fanciful or coined trademarks are eligible to be registered in the U.S. Patent and Trademark Office without proof of secondary meaning.

e. <u>Additional Considerations Relating To Trademark Strength:</u>

When evaluating the strength of Flogrown's trademark, you may also consider the extent of any use by third parties of similar trademarks, Flogrown's promotional expenditures, the volume of Flogrown's sales under its trademark, and whether Flogrown's registration has achieved incontestable status.

2. Similarity of the Parties' Trademarks

In evaluating whether trademarks are similar, you may consider the "overall impression" that Flogrown's and Defendants' trademarks create, including the sound, appearance, and manner in which they are used. You may look at the trademarks as a whole rather than simply comparing their individual features.

3. Similarity of the Parties' Goods

This factor considers not only whether the consuming public can readily distinguish between the parties' goods, but also whether the goods at issue are of a kind that the public attributes to a single source.

4. Similarity of the Parties' Sales Channels, Distribution, and Customers

This factor considers where, how, and to whom the parties' goods are sold. Similarities increase the possibility of consumer confusion, mistake, or deception.

5. Similarity of the Parties' Advertising Media

This factor looks to each party's method of advertising. It is not a requirement that Flogrown and the Defendants advertise in the same magazines, publications, or other advertising outlets. The issue is whether the parties use the same forums and media outlets to advertise, leading to possible confusion.

6. The Defendants' Intent

You may also consider whether the Defendants intended to infringe on Flogrown's trademark. That is, did the Defendants adopt their trademark with the intention of deriving a

benefit from Flogrown's reputation? If you determine that the Defendants intentionally ignored the potential for infringement, you may impute to the Defendants an intent to infringe.

7. Actual Confusion

Because the presence of actual confusion usually is difficult to show, a finding of actual confusion is not required to find trademark infringement. Alternatively, the absence of actual confusion does not necessarily mean the Defendants are not liable for trademark infringement.

The evidence of actual confusion of trademarks should be reasonably significant. You should weigh the alleged actual confusion using the following factors:

1. The amount and duration of the confusion;

2. The degree of familiarity the confused party has with the goods;

3. The type of person complaining of the alleged actual confusion (for example, whether that person is a customer or a noncustomer); and

4. The alleged number of people who are actually confused (for example, whether the confused person is an actual customer or someone else).

If you find that the Defendants have infringed Flogrown's trademark, you must next consider the Defendants's affirmative defenses.

Flogrown claims that Asher Torgeman and Albert Tourgeman are liable for the "contributory infringement" of Flogrown's trademark. "Contributory infringement" occurs when a defendant intentionally induces or causes another party to infringe a plaintiff's trademark. If this occurs, the Defendants can be held liable for other party's infringement.

**Trademark Counterfeiting**

Flogrown claims that the Defendants have committed counterfeiting by unlawfully using Flogrown's trademark in the sale, offer to sell, distribution, or advertising of goods without Flogrown's authorization. To prove a claim for counterfeiting, Flogrown must prove the following facts by a preponderance of the evidence:

1. The trademark used by the Defendants is a copy that is identical or substantially indistinguishable from Flogrown's trademark that is registered on the Principal Register of the United States Patent and Trademark Office;

2. The Defendants' trademark was affixed without Flogrown's permission; and

3. The Defendants used Flogrown's trademark in the sale, offering for sale, distribution, or advertising of goods that are covered by Flogrown's trademark registration.

<u>Trademarks: Remedies</u>

If you find that Flogrown owns a valid trademark, that the Defendants have infringed it, and the Defendants do not have a defense you must consider whether, and to what extent, monetary relief should be awarded.

<u>Defendant's Profits and Calculation of Profits</u>

In addition to Flogrown's actual damages, you may also make an award based on an accounting of the Defendants' profits if you find that:

1. The Defendants' conduct was willful and deliberate;

2. The Defendants were unjustly enriched; or

3. An award of the Defendants' profits is necessary to deter the Defendants' future conduct.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff.

"Unjust enrichment" occurs if the Defendants receive a benefit to which they are not entitled.

In determining the Defendants' profits, Flogrown only is required to prove the Defendants' gross sales. The Defendants may then prove the amount of sales made for reasons other than the infringement. The Defendants also may prove their costs or other deductions which they claim should be subtracted from the amount of their sales to determine their profits on such sales. Any costs or deductions that the Defendants prove by a preponderance of the evidence are required to be subtracted from the sales attributable to the infringement and the difference is the amount that may be awarded to Flogrown.

Nominal Damages

If you find that the Defendants infringed Flogrown's trademark, but you do not find that Flogrown sustained any actual damages or damages based on the Defendants' profits, you may return a verdict for Flogrown and award what are called "nominal" damages. By "nominal" I mean a small amount of damages that you, in your discretion, determine.

31

Statutory Damages[2]

     Flogrown seeks what is known as an award of "statutory damage." Statutory damages are damages established by Congress in the Lanham Act. The purpose of statutory damages is to: compensate the trademark owner, penalize the counterfeiter, and deter future trademark counterfeiting. You may award statutory damages between $1,000 and $200,000 for each trademark that Flogrown proves the defendants used, for each type of goods sold, offered for sale, or distributed.

     If you find that Flogrown proved that the Defendants knew that the trademark they used was a counterfeit, you may award additional statutory damages. It is not necessary that the Defendants knew that the mark was registered by Flogrown, only that the Defendants knew that the trademark was the same or substantially indistinguishable from Flogrown's trademark.

     If Flogrown proves that the Defendants' use of the counterfeit trademark was willful, then you may, but are not required to, increase the statutory damage award to a maximum of $2,000,000 per type of goods sold, offered for sale, or distributed.

---

[2] Defendants object to this instruction and argue that statutory damages are not plead in the amended complaint.

**10.8 Trademarks – False Advertising**[3]

Flogrown claims that the Defendants are liable for false advertising. To prove its claim, Flogrown must prove the following facts by a preponderance of the evidence:

- The Defendants' advertisements were false or misleading;

- The Defendants' advertisements deceived, or had the capacity to deceive, consumers;

- The deception had a material effect on purchasing decisions;

- The misrepresentation affected interstate commerce; and

- Flogrown has been, or is likely to be, injured as a result of the false advertising.

There are two ways in which the Defendants advertisement may be false or misleading: it may be literally false, or it may be literally true but misleading.  If an advertisement is literally false, then it is presumed to deceive, or to have the capacity to deceive, consumers, and Flogrown need not prove that deception.

Additionally, Flogrown must prove the materiality of The Defendants' advertising by showing that The Defendants' deception is likely to influence consumers' purchasing decisions.

### Trademarks—Contributory False Advertising

Flogrown claims that Asher Torgeman and Albert Torgeman are liable for contributory false advertising based on the false advertising of another party. To prove its claim, Flogrown must prove the following facts by a preponderance of the evidence:

- The other party engaged in false advertising; and

---

[3] The Defendants object to including this section 10.8 in the Jury Instructions.

- The Defendants contributed to the other party's false advertising either by knowingly inducing or causing the false advertising, or by materially participating in it.

**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT INSTRUCTIONS**

**1000   Florida Deceptive and Unfair Trade Practices Act**

In this action, both parties claim that the other deceived consumers with false and misleading representations as to the origin, nature, and quality of goods it sold. Under Florida law, certain deceptive acts and unfair trade practices are prohibited. The claim for your determination is each party's claim that the other engaged in deceptive and unfair trade practices, damaging each other.

**1000.1 Florida Deceptive and Unfair Trade Practices Act – Essential Factual Elements**

To prove its claim of deceptive and unfair trade practices, the parties must show each of the following elements by the greater weight of the evidence:

1. **That the other party engaged in a deceptive act or unfair trade practice; and**

2. **That the deceptive act or unfair trade practice caused actual damage to the other party.**

A "deceptive" representation is one that is likely to mislead someone acting reasonably under the circumstances. An "unfair trade practice" is one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious.

**1000.2 Florida Deceptive and Unfair Trade Practices Act – Damages**

If your verdict on Plaintiff's count is for the Defendant, you will not consider the matter of damages as to Plaintiff. Similarly, if your verdict on Defendants' count is for Plaintiff, you will not consider the matter of damages as to Defendants. But if the greater weight of the evidence supports either party's claim, you should determine and write on the verdict form, in dollars, the total amount of damages which the greater weight of the evidence shows the party sustained.

The measure of damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.

A notable exception to the rule may exist when the product is rendered valueless as a result of the defect-then the purchase price is the appropriate measure of actual damages.

With respect to Defendants, should you find that Plaintiff made defamatory statements to third parties, then you may presume damages and determine what amount is an appropriate measure to compensate Defendants.[4]

---

[4] Plaintiff Flogrown objects to including this paragraph in the Jury Instructions. The Opposing Counsel has failed to provide any relevant law that can reasonably be interpreted as requiring damages to be presumed automatically upon a finding of defamation without a separate inquiry as to the FDUPTA claim.

**1000.3 Florida Deceptive and Unfair Trade Practices Act – Consequential Damages**

For purposes of recovery under the Florida Deceptive and Unfair Trade Practices Act, "actual damages" do not include special or consequential damages. Lost profits are considered special or consequential damages.

DEFAMATION

405.2  SUMMARY OF CLAIMS AND CONTENTIONS

The claims and defenses in this case are as follows.  Asher Torgeman and Dixie claim that Flogrown made or published a false statement about them which caused them harm.  Asher Torgeman and Dixie claim the statement was that Asher Torgeman and Dixie were selling counterfeit Flogrown merchandise.

Flogrown claims that alleged statement was not made to published to a third party, that it was a statement of opinion and not a false statement of fact, that it was true, and that it was not of the kind or made to a party which would tend to injure the Counter Plaintiffs.

Asher Torgeman and Dixie must prove their claim by a preponderance of the evidence and Flogrown must prove its defenses or truth and opinion by a preponderance of the evidence.

A statement is published when it is made orally or in writing to a third-party.

A third-party is a party other than the declarant making the statement and the parties about whom the statement is made, i.e., a party other than the Defendants or the Plaintiff.

405.5  NEGLIGENCE

To prove their claim, Asher Torgeman and Dixie must also prove that Flogrown negligently made the statement.

Negligence is the failure to use reasonable care, which is the care that a reasonably careful person would use under like circumstances.  Negligence is doing something that a reasonably careful person would not do under like circumstances or failing to do something that a reasonably careful person would do under like circumstances.

405.6  LEGAL CAUSE

*a.*     *Legal cause generally:*

A publication is a legal cause of damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such damage, so that it can reasonably be said that, but for the publication, the damage would not have occurred.

*b.*     *Concurring cause:*

In order to be regarded as a legal cause of damage a publication need not be the only cause. A publication may be a legal cause of damage even though it operates in combination with the act of another or some other cause if the publication contributes substantially to producing such damage.[5]

---

[5] Plaintiff Flogrown objects to including this section 405.6(b) in the Jury Instructions.

405.9  ISSUES ON PLAINTIFF'S CLAIM — PRIVATE CLAIMANT,

NON-MEDIA DEFENDANT

The issues for you to decide on the claim of Asher Torgeman and Dixie against

Flogrown are:

a.      *Issue whether a defamatory publication concerning claimant was made as claimed:*

whether Flogrown made the statement concerning Asher Torgeman and Dixie to a

third-party as Asher Torgeman and Dixie claim; and, if so, whether the statement

tended to injure Asher Torgeman and Dixie in their business, reputation, or

occupation <u>or</u> charged that they committed a crime.

If a preponderance of the evidence does not support Asher Torgeman and Dixie's

claim on these issues, then your verdict should be for Flogrown.  However, if a

preponderance of the evidence supports Asher Torgeman and Dixie's claim on these issues,

then your verdict should be for Asher Torgeman and Dixie in the total amount of their

damages.  You shall consider the defenses raised by Flogrown.

b.      *Defenses:*

On Flogrown's truth defense, the issue for your determination is whether the

statement made by Flogrown was substantially true.

A statement is substantially true if its substance or gist conveys essentially the same

meaning that the truth would have conveyed.  In making this determination, you should

consider the context in which the statement is made and disregard any minor inaccuracies

that do not affect the substance of the statement.

41

On Flogrown's opinion defense, the issue for your determination is whether the statement made by Flogrown was that or opinion or fact.

A statement of opinion is one made of the declarant's opinion and not one of fact, as reasonably discernable by the third party to whom the statement is made.  In making this determination, you should consider the context in which the statement is made and the party to whom it was made.

If a preponderance of the evidence supports either defense, your verdict should be for Flogrown.

If a preponderance of the evidence does not support either defense, and a preponderance of the evidence supports Asher Torgeman and Dixie's claim on these issues, then your verdict should be for Asher Torgeman and Dixie in the total amount of their damages.

## 405.10  DEFAMATION DAMAGES

If you find for Flogrown, you will not consider the matter of damages.  But, if you find for Asher Torgeman and Dixie, you should award Asher Torgeman and Dixie an amount of money that will fairly and adequately compensate them for such damage as a preponderance of the evidence shows was caused by the statement that Asher Torgeman and Dixie sold counterfeit Flogrown merchandise.  You shall consider the following elements of damage:

a.      *Injury to reputation or health; shame, humiliation, mental anguish, hurt feelings:*

Any injury to reputation or health and any shame, humiliation, mental anguish, and hurt feelings experienced in the past or to be experienced in the future.  There is no exact standard for fixing the compensation to be awarded on account of such elements of damage.  Any award should be fair and just in the light of the evidence.

b.      *Presumed Nominal damages:*

If you find for Asher Torgeman and Dixie that the statement concerned their business or reputation or concerned the commission of a crime but find that no damage has been proved, you should award nominal damages.  Nominal damages are damages of an inconsequential amount which are awarded to vindicate a right where a wrong is established but no damage is proved.[6]

---

[6] Plaintiff Flogrown objects to including this section 405.10(b) in the Jury Instructions both in firm and in its entirety. Flogrown argues that defamation *per se* was not plead in the Defendants' counterclaims.