Coleman W. Watson, Esq.
coleman@watsonllp.com
Leia V. Leitner, Esq.
leia@watsonllp.com
WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634
Facsimile: 407.377.6688
*Attorneys for Defendants, Dixie Heritage, LLC, Asher Torgeman and Albert Tourgeman*

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

# ORLANDO DIVISION

| | |
|---|---|
| FLOGROWN, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>DIXIE HERITAGE, LLC; ASHER TORGEMAN; ALBERT TOURGEMAN,<br><br>    Defendants.<br>-------------------------<br>DIXIE HERITAGE, LLC; ASHER TORGEMAN,<br><br>    Counter-Plaintiffs,<br><br>vs.<br><br>FLOGROWN, LLC,<br><br>    Counter-Defendant. | Case No.:  6:17-cv-00983-GKS-GJK<br><br>**REPLY MEMORANDUM TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT ON PARTIAL FINDINGS** |

Defendants, DIXIE HERITAGE, LLC ("Dixie"), ALBERT TOURGEMAN ("Albert") and ASHER TORGEMAN ("Asher"), pursuant to M.D. Fla. 3.01(d) and Document Entry 105, file this reply to the memorandum of law in opposition to the renewed motion for judgment on partial findings filed by Plaintiff, FLOGROWN, LLC, and state as follows:

Plaintiff's response underscores a fundamental, persistent issue in this case: Plaintiff, again, argues not what it actually alleged in its own Amended Complaint but rather, what it failed to allege in its Amended Complaint. After 2 years of litigation (and trial), Plaintiff continues to inject new issues into this case. Plaintiff's response asks this court to deny the renewed motion for four reasons: (1) Asher Torgeman and Albert Tourgeman are personally liable for infringement; (2) Asher Torgeman and Albert Tourgeman are vicariously liable for infringement; (3) Plaintiff has allegedly shown interstate commerce; and (4) Plaintiff has allegedly proven trademark infringement. None of these arguments hold water.

1. <u>Personal liability</u>.

Plaintiff's response commences with a plea that this court disregard Jesse Welch's own statements at trial that <u>admitted</u> that Plaintiff has no evidence to support personal liability of Asher Torgeman and Albert Tourgeman. Doc. 103 at 1. According to Plaintiff, Mr. Welch is not an "expert on legal matters." *Id.* But opposing counsel made no objections at trial to the line of questioning, and a witness does not need to be qualified to simply tell the truth. That is precisely what Mr. Welch did at trial, and Plaintiff cannot now run from its own admissions, particularly where, as here, the witness sat as a corporate representative. *See, e.g.*, *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012).

Plaintiff's argument misses the mark: corporate owners *can* certainly be personally liable for trademark infringement, but there *must* be evidence to support that finding. There is none here, both because of Mr. Welch's own admissions and the trial testimony of other witnesses. No witness testified that they observed Asher Torgeman or Albert Tourgeman create any goods bearing the FLOGROWN mark; no witness testified that Dixie had any FLOGROWN transfers in its possession, which is the only way the logo could have gotten placed on goods; and no witness testified that the FLOGROWN goods at issue are even heat pressed. Plaintiff's evidence is simply that Asher Torgeman bought goods from Plaintiff, picked those goods up, and then placed them in Dixie's stores. None of this is infringement.

Both cases cited by Plaintiff on this issue recognize, as they must, that corporate owners are not per se liable unless the trademark owner can show evidence of personal liability. *See Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1478 (11th Cir. 1991) (reversing summary judgment that found personal liability and stating that the defendant is only liable "if he actively caused the infringement as a moving, conscious force"); *Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968) ("We are not in a position initially to determine to what extent the named individuals were liable . . . .").

  2. <u>Vicarious liability</u>.

Plaintiff did not, and cannot, point to a single paragraph of its own Amended Complaint that discusses, let alone alleges, vicarious trademark infringement. No matter, Plaintiff's response nudges the court in the direction of vicarious liability case law by citing a single case from the Southern District of Florida. *See* Doc. 103 at 3 (citing *RGS Labs Intern., Inc. v. The Sherwin-Williams Co.*, No. 09-14242-CIV-LYNCH, 2010 WL 317778, at *1 (S.D. Fla. Jan. 11, 2010)). Vicarious liability is, indeed, a viable theory of relief for trademark infringement, but it must <u>actually be alleged</u> in the action to give Plaintiff the cover it seeks here. Plaintiff's Amended Complaint contains no claim at all for vicarious trademark infringement. *See generally* Doc. 38. By contrast, the claims in *RGS Labs* included specific causes of action for contributory infringement and vicarious infringement, both of which are distinct from a cause of action for trademark infringement. *See RGS Labs Intern.*, 2010 WL 317778 at *2. Thus, *RGS Labs* is by no means analogous to this case, and it would be reversible error for this court to find vicarious liability here when Plaintiff only first raised the issue after a bench trial. *See* Fed. R. Ci. P. 8(a) (requiring "a short and plain statement of <u>the claim</u> showing that the pleader is entitled to relief") (emphasis added).

  3. <u>Interstate commerce</u>.

Plaintiff's interstate commerce is also a new one, although the interstate commerce issue is not new in this case since at least summary judgment. *See* Doc. 60 at 8 (briefing interstate commerce based on allegations in Plaintiff's own Amended Complaint); Doc. 71 at 8

(same); Doc. 84 (same); Doc. 99 at 11 (same). It is no secret that Plaintiff has repeatedly alleged and argued interstate commerce in this case based on some so-called website that Dixie allegedly operates. *See* Doc. 38 at ¶ 11. At trial, Plaintiff established nothing more than that Dixie does not even own or operate a website. Instead, trial evidence revealed that Asher Torgeman's wife started her own personal website in 2017, <u>after</u> Plaintiff filed this litigation and even that website does not include any goods bearing the FLOGROWN mark.

When confronted with the foregoing evidence in the renewed motion, Plaintiff has now pivoted into a new amorphous position that somehow Dixie's intrastate activities as a whole affect interstate commerce.[1] *See* Doc. 103 at 4. Plaintiff's new argument rests on the notion that "out-of-state customers" who buy FLOGROWN products from Dixie and then "return to their home states" are "not likely" to buy FLOGROWN products again. *Id.* Importantly, there is not a scintilla of trial evidence to support this argument. Plaintiff made no effort whatsoever at trial to identify any of Dixie's alleged "out-of-state" customers who "return[ed] to their home states," much less solicit trial testimony from any witnesses on this issue.[2] A plaintiff, as here, cannot establish liability on mere speculation.

    4. <u>Trademark infringement</u>.

Plaintiff's trademark infringement argument summarily professes that Plaintiff has "proved trademark infringement" both by reason of Mr. Welch's testimony at trial and because "[a]ny layperson can tell the difference after just a brief explanation and a cursory examination of the goods." Doc. 103 at 5. This, too, is a new theory that Plaintiff is test driving for the

---

[1] This also further highlights why the undersigned moved for judgment on the pleadings as to Count I. *See* Doc. 84. It is undisputed that Count I did not allege interstate commerce, which is an essential and unchanging component of a cause of action under the Lanham Act. *See* Doc. 86 at 2 ("The omission of an express allegation of use in interstate commerce in Count One was an oversight on Flogrown's part"). This court denied Plaintiff's request to amend Count I to correct this "oversight." *See* Doc. 88. Now, despite the absence of an interstate commerce allegation in Count I, Plaintiff's post-trial position is that intrastate activities affect interstate commerce. Defendants should not be required to defeat positions that were never properly alleged by Plaintiff in its own pleading.

[2] Incredibly, Plaintiff also attempts to persuade this court that an alleged loss of "$170,000" in sales somehow establishes interstate commerce. Doc. 103 at 5. Mr. Welch admitted at trial that the only identifiable customer he lost was <u>Dixie</u>. It is unsurprising that Dixie stopped buying products from Plaintiff after Plaintiff sued Dixie.

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

first time after trial. To be sure, just months ago Plaintiff's own papers argued to this court that: "As a lay jury may not know how to distinguish a screen-printed garment from a heat-pressed garment merely by examining the garment itself, the aid of an expert who is trained or experienced with these two types of merchandise <u>will be necessary</u> to help the jury determine whether counterfeiting has actually occurred." Doc. 46 at 9 (emphasis added).

So, which is it? Plaintiff has told this court both that a lay person *can* and *cannot* do the same thing. Plaintiff already said it best, that an expert is "necessary" on one of the pivotal issues in this case, yet Plaintiff offered no expert to this court. Instead, Plaintiff is relying on its own corporate representative, Mr. Welch, on a scientific issue (heat pressing) when he is not qualified to do so, relying on a detective who admittedly was relying solely on Mr. Welch, and relying on Ms. Goodine who also admittedly lacks the requisite knowledge to opine on the issue. Mr. Welch is also unqualified to opine on screen printing, and as the owner of the Plaintiff would clearly be biased in such opinion even if he was so qualified.

**WHEREFORE,** Defendants, DIXIE HERITAGE, LLC, ALBERT TOURGEMAN, and ASHER TORGEMAN, pursuant to Fed. R. Civ. P. 52(c), respectfully request the entry of an Order for judgment on partial findings as to Counts I, II, and III of the Amended Complaint.

**DATED** on December 21, 2018

Respectfully submitted,

WATSON LLP

*/s/ Coleman Watson*
**Coleman W. Watson, Esq.**
Florida Bar. No. 0087288
California Bar No. 266015
Georgia Bar No. 317133
New York Bar Reg. No. 4850004
Email: coleman@watsonllp.com

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

docketing@watsonllp.com
**Leia V. Leitner, Esq.**
Florida Bar No. 0105621
Email**:** leia@watsonllp.com

**WATSON LLP**
189 S. Orange Avenue
Suite 810
Orlando, FL 32801
Telephone: 407.377.6634
Facsimile: 407.377.6688

*Attorneys for Defendants, Dixie Heritage, LLC, Asher Torgeman and Albert Tourgeman*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 21, 2018, pursuant to Fed. R. Civ. P. 5(d)(3), I filed the foregoing document electronically with this court's CM/ECF system, which will serve an electronic copy of the foregoing document on the following counsel of record in this proceeding:

**Andrew Rapacke**
**The Rapacke Law Group, P.A**.
950 S. Pine Island Road
Ste A-150
Plantation, FL 33324
andy@arapackelaw.com
*Attorneys for Plaintiff, FloGrown, LLC*

 */s/ Coleman Watson*
Coleman W. Watson, Esq.